Joel LEVITT, Plaintiff,

v.

S.C. FOOD SERVICE, INC., a Canadian
Corporation, S.C. Food Service, U.S.A.,
Inc., a Delaware Corporation, individu-
ally and d/b/a Manchu Wok, Defendants.

No. 92 C 3292.

United States District Court,
N.D. Illinois, E.D.

April 22, 1993.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff and counter-defendant Joel Levitt ("Levitt") brought an action against defendant counter-plaintiff S.C. Food Services (Canada), Inc., and S.C. Food Services (U.S.A.), Inc., d/b/a Manchu Wok ("Manchu Wok") for employment discrimination in violation of Title VII. 42 U.S.C. § 2000e *et seq.*. Manchu Wok filed a counterclaim, seeking damages for defamation *per se.* Presently before us is Levitt's motion to dismiss Manchu Wok's counterclaim for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, we grant in part and deny in part Levitt's motion to dismiss.

### I. Factual Background [1]

Manchu Wok runs a chain of fast food Chinese restaurants. In 1991, Levitt worked at Manchu Wok as a manager-trainee. After approximately one month, the restaurant fired Levitt, ostensibly for poor work performance.

A short time later, Levitt prepared an updated resume listing his work experience,

---

1. For the purposes of this motion, we take the well-pleaded allegations of the counterclaim as true and make all reasonable inferences in the light most favorable to the counter-plaintiff.

including his tenure at Manchu Wok. Presumably to explain his abrupt departure from the restaurant, Levitt wrote that "New Management led to dismissal of non-Oriental managers." Levitt then sent the resume to over thirty companies in the food services field, and in subsequent job interviews, he repeated the assertion contained in his resume.

## II. Discussion

Levitt moves to dismiss Manchu Wok's counterclaim for failure to state a cause of action for defamation *per se*. In a two-pronged attack on Manchu Wok's allegations, Levitt contends that the single line in the resume, standing alone, cannot sustain an action for defamation *per se*, and that Manchu Wok failed to set forth the exact language used by Levitt in his employment interviews. We address these contentions in turn.

### A. Resume Statement

■ In Illinois, a publication is defamatory *per se* if it is "so obviously and naturally harmful to the person to whom it refers that a showing of special damages is unnecessary." *Owen v. Carr*, 113 Ill.2d 273, 497 N.E.2d 1145, 1147, 100 Ill.Dec. 783, 785 (1986). When the plaintiff is a corporation, Illinois courts have held that the "alleged defamation must assail the corporation's financial position, business methods, or accuse it of fraud and mismanagement." *Harris Trust and Sav. Bank v. Phillips*, 154 Ill. App.3d 574, 506 N.E.2d 1370, 1373, 107 Ill. Dec. 315, 318 (1st Dist.1987). Aspersions which undercut a corporation's reputation for discharging its duties with integrity and have the likely effect of harming the business, fall within the ambit of defamation *per se*. *See American Pet Motels, Inc. v. Chicago Veterinary Medical Assoc.*, 106 Ill.App.3d 626, 435 N.E.2d 1297, 1300, 62 Ill.Dec. 325, 328 (1982); *Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262 (7th Cir.1983) (if a corporation's reputation "for adhering to the moral standards of the community in which it sells its products" is attacked "in a fashion likely to harm the corporation seriously the corporation has been libeled under Illinois law").

In order to be declared defamatory *per se*, however, statements must first be scrutinized under the innocent-construction rule. *Owen*, 497 N.E.2d at 1147, 100 Ill.Dec. at 785. Although much-maligned, the innocent-construction rule requires a court to consider a statement "in context, with the words and implications therefrom given their natural and obvious meaning." *Chapski v. Copley Press*, 92 Ill.2d 344, 352, 442 N.E.2d 195, 65 Ill.Dec. 884 (1982). If the statement, viewed contextually, "may reasonably be innocently interpreted," then the court, as a matter of law, must conclude that the statement is not defamatory *per se*. *Id.* *See also Owen*, 497 N.E.2d at 1148, 100 Ill.Dec. at 786.

The line in Levitt's resume, asserting that "[n]ew management led to the dismissal of non-Oriental employees," satisfies the standards for defamation *per se*. The simple statement declares that Manchu Wok discharged employees based on their national origin—behavior which violates federal law, public policy, and commonly accepted morality. Such a statement, published amongst Manchu Wok's peers and accessible to potential managerial employees, impugns the restaurant's method of doing business and denigrates its integrity and lawfulness.

Moreover, the line does not lend itself to innocent construction. No context is required to imbue the phrase with defamatory meaning. Standing alone, the statement avers that the employer discriminated against non-Oriental employees. Accordingly, we deny Levitt's motion to dismiss that portion of the counterclaim related to the resume statement.

### B. Interview Statements

■ Levitt also challenges Manchu Wok's allegations that the statements he made in interviews constitute defamation *per se*. Specifically, Levitt points out that federal notice pleading, which governs here, requires a plaintiff to set forth the exact defamatory statement. *Vantassell–Matin v. Nelson*, 741 F.Supp. 698 (N.D.Ill.1990) (Court held (1) that "[b]ecause rules as to the sufficiency of pleadings are procedural rather than substantive, under *Erie* this Court looks to federal rules of pleading," and (2) that federal rules "require plaintiffs alleging libel or slan-

der to recite the precise language alleged to be defamatory."). By pleading the exact language at issue, a defamation plaintiff provides the defendant with the information s/he needs to respond appropriately. This is especially true when a plaintiff alleges defamation *per se,* as opposed to defamation *per quod.*

 Here, Levitt correctly observes that Manchu Wok failed to plead the actual language used by Levitt during his employment interviews. Instead, Manchu Wok generally charges that "Levitt reiterated said accusation identified in Paragraph 7 [the resume statement] to some or all of the companies with whom Levitt interviewed." Counterclaim at ¶ 10. Manchu Wok asks us to infer that its allegation that Levitt "reiterated said accusation identified in Paragraph 7," constitutes an allegation that, during the interviews, Levitt used the exact same language found in the resume. Given the non-conversational nature of the resume statement, it is extremely unlikely that Levitt uttered the identical words in his interviews. It is equally unlikely that he used the same language in each of the interviews. We decline, therefore, to draw such an inference.[2]

Without the exact language allegedly used in the interview, Levitt cannot meaningfully respond to Manchu Wok's counterclaim of defamation *per se.* Accordingly, we dismiss that portion of the counterclaim related to the statements Levitt allegedly made in his job interviews.

### III. Conclusion

For the foregoing reasons, we grant in part and deny in part counterdefendant's motion to dismiss. It is so ordered.

2. Although we might reasonably infer that Levitt expressed the same *content* in each of the interviews, that is not sufficient for the purposes of a claim for defamation *per se.*